BUNDE, Respondent, v. SMITH, Superintendent of Banks, et al, Appellants.

(230 N. W. 847.)

(File Nos. 6884, 6885. Opinion filed May 10, 1930.)

*Loucks & Wohlheter,* of Watertown, and *T. B. Thorson,* Special Counsel for Banking Department, of Pierre, for Appellants.

*McFarland & Kremer,* of Watertown, for Respondents.

BROWN, P. J. ▉ Two actions consolidated for trial. Plaintiff in each action bought twenty-five shares of stock of the State Bank of Grover, of the par value of $100 a share, and each

gave the bank a note for $2,500 for the purchase price. After maturity, the notes were renewed, and August Bunde gave the bank an additional note for the interest that had accrued on his note. A certificate for twenty-five shares was made out in the name of each purchaser, but it seems that the certificates remained in the bank and were never in the manual possession of either purchaser. After getting the renewal notes, the bank some time in July, 1926, sold the stock to other parties for $150 a share, received the price of $3,750 for each twenty-five shares, $7,500 in all, canceled the certificates standing in the names of the plaintiffs, and issued new certificates to the new purchasers. On July 30, 1927, the bank, being insolvent, was taken over by the superintendent of banks for liquidation, and in December, 1927, plaintiffs brought these actions for cancellation of their notes, and from judgments for plaintiffs defendants appeal.

The appeal might be disposed of by reminding appellants that one cannot keep the merchandise and also have the price. Commercial Investment Trust v. Wesling, 53 S. D. 337, 220 N. W. 855. Appellants cite a number of authorities to the effect that, where shares of stock have been wrongfully transferred without the consent of the owner, he may resort to equity to compel the corporation to set aside the transfer and restore him to his rights as a stockholder, or he may recover damages for the wrongful transfer, and contend that these remedies are exclusive. Counsel for appellants admit that industrious search on their part has not revealed "a parallel case" to this. We can readily believe that it would be hard to find a case where a seller of property, having it in his possession, resold it for a much higher price than was due from the purchaser, and, after having been paid that price, insisted on likewise being paid by the original purchaser who had either never received the property or from whom it had been retaken by the seller.

It has been held that the Uniform Sales Act applies to the sale of corporate stock, Postel v. Hagist, 251 Ill. App. 454, and under that act, where a note has been received as conditional payment for goods and is dishonored by nonpayment, the seller, if the goods are in his possession, may resell them, in which case he is not liable for any profit made by the resale, but cannot recover from the original buyer unless he sustains a loss on the resale.

Laws 1921, c. 355, §§ 52, 53, 60; Ford Motor Co. v. Fry, 203 Ill. App. 46. At the oral argument counsel for appellants, in explanation or extenuation of appellants' attitude in the case, intimated that the bank cashier who made the resale was related to respondents, and effected the resale so that they might avoid a possible stockholders' double liability should the bank fail at some indefinite time in the future. But no question of that sort is presented by the record.

The judgments are affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.